UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ERIC MATTSON, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | Case No. 3:25-cv-36 |
| v. | ) | |
| | ) | Judge Atchley |
| OKSANA KRISTEN SINGH and IQBAL SINGH, | ) | |
| | ) | Magistrate Judge Poplin |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Oksana Kristen Singh and Iqbal Singh's Renewed Motion to Dismiss [Doc. 24].[1] For the following reasons, the Motion [Doc. 24] is **GRANTED**. Rather than dismiss this action, however, the Court will transfer it to the United States District Court for the Southern District of Alabama in the interest of justice.

I.     BACKGROUND

This case arises out of a soured romance. Oksana was a student at Lincoln Memorial University's College of Veterinary Medicine. [Doc. 8 at ¶ 10]. While attending LMU, Oksana began dating an adjunct instructor, Plaintiff Eric Mattson. [*Id.* at ¶¶ 9, 11]. Their relationship lasted over two years, extending beyond Oksana's time at LMU to after she moved to Alabama. [*Id.* at ¶¶ 12–18]. Oksana concealed this relationship from her father, Iqbal. [*Id.* at ¶ 18]. Despite this, Mattson eventually decided to propose. [*Id.* at ¶ 21].

This, however, never came to pass as Oksana and Mattson's relationship abruptly ended. [*See id.* at ¶¶ 21–23]. Given this sudden change and the fact Oksana was engaged to another man shortly thereafter, Mattson became concerned about Oksana's mental health. [*Id.* at ¶ 23].

---

[1] Given that Defendants share a last name, the Court will refer to them by their first names to avoid confusion.

Accordingly, he reached out to Oksana's mother, her brother, and her fiancé, and Iqbal "to secure assistance for her in the event she was suffering from what appeared to be a psychological condition." [*Id.* at ¶ 24]. Neither Oksana nor Iqbal took kindly to these efforts. [*Id.* at ¶ 25].

On January 16, 2024, Oksana filed a Petition from Abuse ("PFA") against Mattson in the Circuit Court for Baldwin County, Alabama. [*Id.* at ¶¶ 26–27]. Oksana allegedly falsely accused Mattson of outrageous behavior in the PFA. [*Id.* at ¶ 26]. She also stated that Mattson "may have been fired from Lincoln Memorial University[.]" [*Id.* at ¶ 27]. Mattson was still employed by LMU at the time Oksana filed the PFA, but his employment was terminated ten days later on January 26, 2024. [*Id.* at ¶ 28].

Mattson thinks Oksana and/or Iqbal are to blame for his termination. [*See id.* at ¶¶ 27, 29]. Specifically, Mattson believes that—given the temporal proximity of his termination to the PFA and the fact Oksana stated in the PFA that he "may have been fired"— Oksana and/or Iqbal "contacted certain individuals at LMU and made knowingly false, defamatory, and salacious allegations" against him with the intent of getting him fired. [*See id.* at ¶ 27]. He further believes these alleged statements were a motivating factor, if not the sole factor, in LMU's decision to terminate him. [*See id.* at ¶ 29].

Based on these beliefs, Mattson filed the instant lawsuit. [*See* Doc. 1]. Through the currently operative First Amended Complaint, he brings claims against Oksana and Iqbal for (1) intentional interference with business relations, (2) interference with/inducement to breach contract, (3) invasion of privacy, (4) false light invasion of privacy, (5) defamation, and (6) intentional infliction of emotional distress, all under Tennessee law. [Doc. 8]. Now, Oksana and Iqbal seek to dismiss those claims, arguing, among other things, that the Court lacks personal

jurisdiction over them.[2] [Doc. 24]. They support this argument with affidavits generally averring that (1) Iqbal's only contacts with Tennessee occurred when he drove through Tennessee to other states more than five years ago, [Doc. 24-1], and (2) Oksana's only contacts with Tennessee occurred when she attended LMU, an enrollment that ended in Fall 2021 and during which she lived in Virgina, [Doc. 24-2]. The Motion [Doc. 24] is ripe for review.

## II.    STANDARD OF REVIEW

A plaintiff bears the burden of demonstrating personal jurisdiction over each defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). As the United States Court of Appeals for the Sixth Circuit has explained:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (internal citation and punctuation omitted); *see Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (faced with a properly-supported motion for dismissal, a plaintiff may not stand on its pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

A district court has discretion in how it chooses to resolve a Rule 12(b)(2) motion. *Malone*, 965 F.3d at 505. If the motion can be ruled on before trial, the court may (1) determine the motion based on affidavits alone; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. *Id.* If the court decides the motion "solely on written

---

[2] Because the Court must address whether it has personal jurisdiction over the Defendants before their alternative arguments, *Bird v. Parsons*, 289 F.3d 865, 872–73 (6th Cir. 2002), and because the Court's lack of personal jurisdiction prevents it from making any alternative holdings on the merits, *Herschfus v. City of Oak Park*, 150 F.4th 489, 497 n.5 (6th Cir. 2025), this Memorandum Opinion and Order does not address Defendants' alternative arguments for dismissal.

submissions and affidavits . . . the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing . . . in order to defeat dismissal." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). In this context, the court reviews the pleadings and other documentary evidence in the light most favorable to the plaintiff, without considering the defendant's controverting assertions. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003). If the defendant submits affirmative evidence showing the court lacks jurisdiction, the plaintiff must respond by showing, through affidavits or otherwise, specific facts that establish jurisdiction. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

"Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff… alleges collectively fail to state a prima facie case for jurisdiction." *Theunissen*, 935 F.2d at 1458. This rule prevents a defendant from defeating personal jurisdiction by simply filing an affidavit contradicting the jurisdictional allegations of the complaint. A defendant may, however, invoke the court's discretion to order a pretrial evidentiary hearing, just as a plaintiff may move for jurisdictional discovery. *See Malone*, 965 F.3d at 505–06 (district court erred by crediting defendant's controverting affidavit without first allowing any form of discovery).

### III. ANALYSIS

No party has requested the Court conduct a hearing as to whether the Court has personal jurisdiction over the Defendants. Accordingly, the Court will resolve Defendants' Motion on the papers, meaning Mattson must only make a prima facie showing of personal jurisdiction as to each Defendant. *Air Prods. and Controls, Inc.*, 503 F.3d at 552. In determining whether Mattson has made this showing, the Court considers the pleadings and other documentary evidence in the light most favorable to him, without considering the Defendants' controverting assertions. *Bridgeport*

*Music, Inc.*, 327 F.3d at 478.

Whether a court has personal jurisdiction over a defendant depends on whether "the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Id.* at 477 (cleaned up); *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023). "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc.*, 327 F.3d at 477. Here, "[t]he Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214(a)(6), has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause." *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). Accordingly, whether the Court possesses personal jurisdiction depends wholly on whether exercising such jurisdiction would be consistent with federal due process requirements. *Id.*

"Due process requires the defendant to possess certain minimum contacts with the forum State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Johnson*, 85 F.4th at 432 (internal quotation marks omitted). These contacts can give rise to two types of personal jurisdiction: general and specific. *Id.* General jurisdiction—which the parties appear to agree is not implicated here—arises when "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Jurisdiction exists in these circumstances because a defendant's contacts with the forum state "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A.*

*v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, exists only when a claim "arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). In the Sixth Circuit, courts employ a three-part test for determining whether specific jurisdiction exists over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968). If any of these three requirements is not met, then the court lacks specific jurisdiction. *Miller*, 694 F.3d at 680.

Defendants argue Mattson cannot satisfy the *Southern Machine* test as his principal allegation concerning their relevant contacts with Tennessee is too speculative to establish specific personal jurisdiction. [Doc. 24 at 4; *see also* Docs. 33–34]. In response, Mattson argues that given Oksana's statement in the PFA that he may have been fired, "combined with the timing of [his] dismissal and lack of grounds therefore, it is plausible that either [Oksana] or [Iqbal] contacted LMU for the express purpose of seeking (and securing) [his] termination." [Doc. 30 at 8]. He then goes on to argue how this alleged contact supports the conclusion the Court has specific personal jurisdiction over the Defendants. [*Id.* at 9–11]. The Court finds Defendants have the better argument.

Although the burden for establishing a prima facie case of personal jurisdiction (general or specific) is slight, "conclusory allegation[s] without evidentiary support" are insufficient to meet it. *Parker v. Winwood*, No. 16-cv-00684-JPM-an, 2017 U.S. Dist. LEXIS 206112, at *18 (M.D. Tenn. Oct. 17, 2017), *aff'd* 938 F.3d 833, 839 (6th Cir. 2019); *see also Morrison v. Taurus Int'l Co.*, No. 3:11-cv-322, 2012 U.S. Dist. LEXIS 162036, at *3 (S.D. Ohio Nov. 13, 2012)

("'Conclusory statements or bare allegations alone are insufficient to establish personal jurisdiction.'" (quoting *Murray v. Bierman, Geesing, Ward & Wood, LLC*, No. 11cv1623, 2012 U.S. Dist. LEXIS 139365, 2012 WL 4480679, *1 (D. Md. Sept. 27, 2012)). A plaintiff cannot establish personal jurisdiction over a defendant based on speculation alone. *Cabinets to Go, LLC v. Qingdao Haiyan Real Estate Grp. Co.*, 605 F. Supp. 3d, 1051, 1062 (M.D. Tenn. June 6, 2022) (finding a plaintiff's allegations "too vague, speculative and sparse to show personal jurisdiction"). And here, speculation is all Mattson has.

Mattson's assertion that the Court has specific personal jurisdiction over the Defendants hinges on his belief that one or both of them contacted LMU and made false statements about him with the intent of getting him fired. [*See* Doc. 8 at ¶ 27; Doc. 30 at 8]. Specifically, he alleges the following:

> Upon information and belief (particularly in light of language used in the **January 16, 2024**, PFA filed by Oksana: "*Defendant may have been fired from Lincoln Memorial University*"), Oksana and/or Iqbal contacted certain individuals at LMU and made knowingly false, defamatory, and salacious allegations regarding Dr. Mattson with the intent of LMU terminating its contractual employment relationship with him.

[Doc. 8 at ¶ 27 (emphasis in original)]. What he does not allege, however, are any facts that support this conclusory allegation. For example, he does not allege (i) who at LMU (whether by name or position) Oksana and/or Iqbal allegedly contacted, (ii) what the supposedly "false, defamatory, and salacious allegations" were, or (iii) any facts supporting the idea that if Oksana and/or Iqbal contacted LMU, they did so with the express intent of getting him fired. The affidavit Mattson submitted in opposition to Defendants' Motion similarly fails to fill in these blanks. Instead, it just states that Mattson believes Oksana and/or Iqbal made false statements to LMU with the intent of getting him fired because (i) Oksana stated in the PFA that he may have been terminated, (ii) his termination occurred close in time to the PFA, (iii) his relationship with Oksana, which she

attempted to conceal from Iqbal, ended acrimoniously, and (iv) he can think of no other reason why LMU would have terminated him. [Doc. 29-1 at ¶¶ 16–19].

These contentions are insufficient to support the conclusion that either Oksana or Iqbal made false statements to LMU with the intent of getting Mattson fired. They speak to the fact that Defendants did not like Mattson and suggest an awareness on Oksana's part that Mattson's employment may have been in jeopardy. But the Court cannot make the logical leap from "my ex-girlfriend and her father did not like me, and she thought I may have been fired" to "therefore one or both of them must have contacted my employer and made false statements about me to get me fired." If Mattson had provided additional facts to bridge the gap between these two propositions—e.g., that Oksana or Iqbal told him they would ruin his life, that his termination notice referenced a situation involving Oksana and/or Iqbal, or that the PFA contained additional details suggesting Oksana or Iqbal contacted LMU, not just that Oksana suspected Mattson may have been fired—then perhaps the Court could reasonably accept Mattson's conclusory allegation that Oksana and/or Iqbal made false statements to LMU hoping to get him fired. But Mattson has not provided any such facts and without them, he cannot rely on his conclusory allegation regarding the alleged false statements to establish specific personal jurisdiction over the Defendants.[3] *See Parker*, 2017 U.S. Dist. LEXIS 206112, at *18; *Cabinets to Go, LLC*, 605 F. Supp. 3d at 1062.

Without this allegation, Mattson cannot satisfy the second prong of the *Southern Machine* test as none of the Defendants' remaining contacts with Tennessee—i.e., Iqbal's driving through Tennessee and Oksana's past attendance at LMU [Docs. 24-1, 24-2]—gave rise to his claimed

---

[3] This is particularly true regarding Iqbal. While Mattson at least attempts to support his belief that Oksana contacted LMU hoping to get him fired by pointing to her statement in the PFA that he may have been terminated and the temporal proximity of his termination to the PFA, it appears the only fact he can base his belief that Iqbal contacted LMU on is that Iqbal did not like him/did not approve of his and Oksana's relationship. It simply cannot be the case that a plaintiff can hail his ex-girlfriend's father into an out-of-state court on nothing more than an allegation that "my ex's father doesn't like me, so he must have caused the harm I suffered in the forum."

injuries. *S. Mach. Co.*, 401 F.2d at 381, 384 n. 29. Accordingly, the Court lacks specific personal jurisdiction over the Defendants. *S. Mach. Co.*, 401 F.2d at 381; *Miller*, 694 F.3d at 680.

Having reached this conclusion, the Court must next decide whether to dismiss this action without prejudice or transfer it to another judicial district. 28 U.S.C. § 1631 provides that whenever a court finds it lacks jurisdiction over an action, it shall, "if it is in the interest of justice, transfer such action…to any other such court…in which the action…could have been brought at the time it was filed[.]" *See also Roman v. Ashcroft* 340 F.3d 314, 328 (6th Cir. 2003) (holding that Section 1631 applies when a court lacks personal jurisdiction over a defendant). Considering that the statute of limitations may have run on one or more of Mattson's claims since this case began, *see* Tenn. Code Ann. § 28-3-104, the Court finds it is in the interest of justice to transfer this action as opposed to dismissing it, *see Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 484 (6th Cir. 2009) ("[T]he reasons for transferring a case to a proper forum rather than dismissing are especially compelling if the statute of limitations has run since the commencement of the action, so that dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits." (internal quotation marks omitted)). As to where this case should be transferred, Defendants both reside in the Southern District of Alabama,[4] and while they do not expressly request transfer, they assert that Mattson could have, and indeed should have, filed this action there. [*See* Doc. 24 at 7, 9]. Accordingly, the Court will transfer this action to the United States District Court for the Southern District of Alabama.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion [Doc. 24] is **GRANTED**. Rather than

---

[4] *See* 28 U.S.C § 81(c) (stating that Baldwin County, Alabama, and Dallas County, Alabama are within the Southern District of Alabama); [Doc. 8 at ¶¶ 2 (alleging Oksana is a resident citizen of Baldwin County, Alabama), 3 (alleging Iqbal is a resident citizen of Dallas County, Alabama); Doc. 24-1 (confirming Iqbal lives in Dallas County, Alabama); Doc. 24-2 (confirming Oksana lives in Baldwin County, Alabama)].

dismiss this action, however, the Court **DIRECTS** the Clerk to transfer this action to the United States District Court for the Southern District of Alabama and to **CLOSE** this Court's file.

**SO ORDERED**.

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**